**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 2, 2021[*]
Decided June 2, 2021

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2985

| | |
|---|---|
| AARON P. STULL, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 17-cv-1200-RJD |
| MOHAMMED SIDDIQUI, et al., *Defendants-Appellees.* | Reona J. Daly, *Magistrate Judge*. |

**O R D E R**

While incarcerated at Menard Correctional Center in Chester, Illinois, Aaron Stull sued medical staff and prison officials under 42 U.S.C. § 1983 for providing inadequate treatment for his Type II diabetes. The district court entered summary judgment for the defendants. Because Stull offered no evidence that the defendants were deliberately indifferent to his medical needs, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Stull's concerns about his treatment begin in March 2017. Blood tests showed elevated current and monthly-averaged blood-glucose levels. Menard's treatment guidelines state that monthly-averaged levels like Stull's reflect "poor control" of diabetes and require more frequent attention than the prison's quarterly chronic care clinics. A nurse practitioner therefore scheduled Stull for diabetes treatment at the clinic the next month. A lockdown later forced the prison to reschedule his appointment.

In mid-May 2017, medical staff asked a visiting doctor, John Coe, to review prescriptions that were set to expire for all offenders who had missed the clinic because of the lockdown. Dr. Coe renewed all then-current prescription medications listed in Stull's records, including Metformin, a drug prescribed to Stull to control his blood sugar. Before then, Stull had gone about six weeks without his Metformin. (Stull also mentions that his prescription for a topical cream for his leg had expired months earlier, so it was not renewed then. But he does not seek relief on appeal based on that event.)

Stull received more treatment for his diabetes. In May, his blood tests showed a blood-glucose level of 458—far higher than the reference range of 65 to 110—which required prompt attention. Dr. Mohammed Siddiqui reviewed the lab results and ordered administrative staff to schedule Stull with the next available provider. Staff scheduled the appointment for six weeks later, with Dr. Siddiqui on July 3. At that appointment, the doctor added a new drug to help lower Stull's blood-glucose levels. He also ordered a follow-up visit in one month. Later lab results showed that Stull's current and monthly-averaged blood-glucose levels remained elevated, so over the next 15 months, whenever tests showed high monthly averages, Dr. Siddiqui regularly adjusted Stull's medications.

Before Stull saw Dr. Siddiqui on July 3, he filed two emergency grievances in June. Among other things, they addressed the six-week lapse in receiving Metformin and his need to see a doctor after his May blood tests revealed high glucose levels. The warden expedited the first grievance, filed on June 20, sending it to the healthcare unit. While awaiting a response, Stull filed a second grievance on June 28, repeating his concerns and adding leg pain and vision problems. Dr. Siddiqui and the nursing supervisor reviewed the June 20 grievance. After an investigation, they wrote that his prescriptions were renewed in May and that he saw Dr. Siddiqui on July 3 for diabetes treatment. The grievance officer deemed the grievance moot.

Stull then sued under § 1983, alleging that the defendants violated the Eighth Amendment by inadequately treating his diabetes from March to July 2017. As a result

of the lapse in his medication and delays in treatment, he alleged, his blood-sugar levels surged out of control, leading to pain, vision loss, and nerve damage. A magistrate judge, presiding by consent, entered summary judgment for the defendants. She concluded that the medical professionals did not recklessly ignore a known need for more immediate treatment, and the other defendants were entitled to rely on the medical providers' professional judgment when responding to his grievances. Stull moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). He complained that the court relied on defendants' expert testimony without allowing him to challenge it. The magistrate judge denied Stull's motion because she did not rely on the expert testimony and he identified no new evidence or manifest error.

To stave off summary judgment, Stull needed to submit evidence suggesting that his diabetes was serious (a point undisputed), and that the defendants' response to it was "so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (quotations and citation omitted). On appeal, Stull argues that the record permits such a finding, but we disagree.

We begin with the nurse practitioner. Stull argues that in March the nurse practitioner deliberately ignored Stull's high, monthly-averaged blood-glucose levels. He points to guidelines advising that his levels at that time required more frequent treatment than the prison's quarterly chronic care clinics. Those guidelines do not establish the Eighth Amendment standard; but in any case, the nurse practitioner's assessment and decision to schedule him for the next available clinic, which was supposed to take place within a month, were consistent with those guidelines. Under these circumstances, this treatment was not "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). True, the next month's clinic was cancelled because of the lockdown, but no evidence suggests that the nurse practitioner knew about the appointment's cancellation or that it was not expeditiously rescheduled.

Next, Stull argues that in May Dr. Coe recklessly ignored his need for immediate medical attention because, in reviewing Stull's file, the doctor knew that Stull had high blood-glucose levels. But Dr. Coe reviewed Stull's file for the sole purpose of renewing prescriptions set to expire. He also knew that Stull was to be scheduled for diabetes treatment in the clinic and had no reason to think that other providers were ignoring Stull's needs. So Dr. Coe did not deliberately ignore known dangers to Stull.

Stull next turns his attention to Dr. Siddiqui. He argues that because the doctor observed in May that Stull's blood-glucose levels rose above 450, he needed to respond quickly. But no reasonable trier of fact could find that Dr. Siddiqui recklessly disregarded Stull's need for a prompt response. After reviewing Stull's lab results revealing a blood-glucose level of 458, Dr. Siddiqui immediately instructed that staff schedule Stull for the next available medical provider. Stull counters that in his June 20 grievance, which Dr. Siddiqui reviewed, Stull complained that he had not received an appointment, so Dr. Siddiqui knew that his instructions to staff were ignored. But although Dr. Siddiqui reviewed this grievance, nothing suggests that he saw it before his July 3 appointment with Stull. And at that time he addressed Stull's concerns and altered his medications to manage his blood-glucose levels.

We may quickly dispatch Stull's remaining arguments. First, he contends that prison officials mishandled his June 20 grievance. But in responding to a grievance, administrators may rely on the judgment of medical professionals. *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017). They did so here: when they reviewed the grievance, they knew that Dr. Coe had already renewed Stull's medications and Dr. Siddiqui was treating the diabetes and symptoms. Second, Stull cites the six-week delay in receiving Metformin, but no evidence ties that delay to any defendant. Finally, Stull seeks injunctive relief against the warden, but that claim fails because there is no ongoing constitutional violation. *See Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 894 (7th Cir. 2012).

                                                                                                                    AFFIRMED